IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:25-CR-350 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | |
| | ) | |
| GODWIN OBOT, | ) | GOVERNMENT'S TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its counsel, David M. Toepfer, United

States Attorney, and Brett Hammond and Elizabeth M. Crook, Assistant United States Attorneys,

respectfully submits the following trial brief in accordance with this Court's Trial Order.

## I.     STATEMENT OF FACTS

At trial, the United States intends to offer evidence of the following:

A.     BACKGROUND INFORMATION ON GODWIN OBOT'S EMPLOYMENT
AND TERMINATION FROM THE DEFENSE FINANCE ACCOUNTING
SERVICE.

For over a year, Defendant Godwin Obot was employed as an Accountant GS-0510-11

for the Defense Finance Accounting Service (hereinafter "DFAS") in Cleveland, Ohio.  DFAS is

a federal agency that provides accounting services in support of the Department of Defense.

Obot worked at DFAS from March 18, 2018, until he was fired on August 19, 2019.   On

January 19, 2019, Obot engaged in an argument with his direct supervisor, J.M., telling J.M., "I

do not want to talk to you. I do not respect you. I am only talking to [E.P.]."   "E.P." was a

federal employee and second line supervisor who supervised J.M. and in turn, Godwin Obot.

E.P. tried to calm Obot down and diffuse the situation.  But Obot was shaking his finger and yelling at J.M. before the two men were separated.

Several months later, on May 30, 2019, Obot engaged in yet another confrontation with J.M, but in the presence of another supervisor, Tonya Hughes-Scruggs.  At the time of the confrontation, Tonya Hughes-Scruggs was the third line supervisor and Director of Departmental Reporting.  Obot came into her office to speak with her.  J.M. followed Obot into her office to ask if Obot had finished a time sensitive project assigned to him.  Instead of providing J.M, a calm, respectful response to his question, Obot yelled at J.M., "NO, I DO NOT WANT TO TALK TO YOU, I DON'T WANT TO SEE YOU AS A MATTER OF FACT. I F*CKING HATE YOU! YOU ARE THE DEVIL!"  Hughes-Scruggs watched the exchange and saw Obot lunging in J. M's direction with his fists clenched.  After the altercation, Hughes-Scruggs wrote in a memorandum of record that it looked like Obot was going to hit J.M.

E.P. took disciplinary action against Obot and wrote Notice of Proposed Removal and sent it to Obot and her supervisor, Tonya Hughes-Scruggs for approval.  Obot was served with a copy of the notice along with a Notice of Placement on Administrative Leave.  E.P.'s Notice of Proposed Removal cited the January and April 2019 incidents where Obot had engaged in aggressive and disrespectful behavior toward J.M.  In the Notice, E.P. explained that "I cannot tolerate the contemptuous behavior of an employee who lashes out as his supervisor's attempts to develop and manage the employee and to hold him accountable."  E.P also expressed that the incidents weren't isolated occurrences, but rather a "pattern of continuous misconduct" and the agency had "no confidence or trust in [his] ability to control [his] behavior or emotions in the future."  The Notice of Proposed Removal provided Obot with a right to respond within 15

2

calendar days and representation of his choosing to assist with his reply to the Notice.  Obot received the Notice of Removal and Administrative Leave, but refused to sign the documents.

Ms. Hughes-Scruggs presided over the removal proceedings.  We anticipate her testimony will reflect that she reviewed many employee statements, including Obot's prior to terminating his employment.  She also consulted with the HR and Legal Department before terminating Obot for contemptuous behavior.  On August 12, 2019, Hughes-Scruggs issued a Notice of Decision terminating Obot's employment.  In her Notice of Decision, Ms. Hughes-Scruggs concluded that Obot's termination was reasonable and appropriate because his conduct was "serious, repeated… and prevents management from achieving the agency mission."  And while she did consider Obot's prior lack of discipline and successful performance rating, Hughes-Scruggs concluded his previous positive simply did not outweigh the seriousness of his misconduct.  The agency could not risk future incidents of misconduct by Obot.  His failure to acknowledge any wrongdoing whatsoever in both incidents was damning and also weighed heavily towards firing him from his job.   Obot was sent his termination paperwork via certified mail along with a copy of his grievance and appeal rights.  Obot was officially terminated from his position from DFAS on August 19, 2019.

The next month, Obot filed an initial appeal with the Merit System Review Board.  The MSRB affirmed the agency's termination decision.  In its opinion, the MSRB determined the agency had met its burden of proof supporting the factual basis for the charges and found the penalty imposed was reasonable.  Obot then submitted a petition for review to the Federal Circuit Court, which was ultimately transferred to the Northern District of Ohio because they lacked jurisdiction to decide both his termination claim along with his discrimination claim.  Once transferred to the district court level, the agency filed a motion to dismiss.  Obot's case was

3

dismissed because he failed to file within the 30-day period required for filing a notice of appeal with the federal district court.  According to the court's decision, the 30-day time limit for filing a lawsuit in federal district court is "jurisdictional, mandatory, and not subject to equitable tolling."  *Godwin Obot v. Department of Defense*, Case No. 1:22-CV-2312, at *5 (N.D. Ohio, Mar. 28, 2024).

Obot was out of options.  He could no longer appeal his termination with the federal court system.  The opinion issued by the district court made it abundantly clear he had no path to obtaining his job back.  He had no legal recourse whatsoever.  Less than two weeks after receiving the dismissal decision, Obot sent E.P. the first of many threats they would receive over the span of several years.  Obot was terminated on August 19, 2019, but the barrage of threats from Obot to E.P did not stop until several years later, when Obot was ultimately arrested for the charges in the Indictment.

B.      TWO WEEKS AFTER OBOT'S APPEAL WAS DISMISSED BY THE NORTHERN DISTRICT OF OHIO, OBOT SENDS THREATS TO MURDER VICTIM E.P. AND E.P.'S FAMILY FROM SEVERAL DIFFERENT PHONE NUMBERS.

On April 11, 2024, around 9:15AM, E.P received a text notification on their phone from an unrecognized number.  E.P. picked it up and saw it was a text from a number that wasn't saved on the phone, 952-866-8867.  The text was a threat.  The threat warned E.P. that "It shall never be well with you, your kid, & ya useless family including relatives!"  A screenshot of E.P.'s LinkedIn profile photo was sent with a second threat, "B*tches & hoes without work experience came from working at a local restaurant kitchen in Ohio and becoming a supervisor in DFAS because of your corrupte [sic] useless European fathers in USA got you feeling like all this and all that fool! Feeling too bad for your relatives & family's[sic]!   The messages did not stop there.  Less than an hour later, E.P picked up her phone and received another threat, this

time from a 612-495-7499 number, "Promised it would be very ugly for you, your kid, and any relatives and saved this text as a reminder because it's the last time you've ever heard from me murderf*ckers [sic] it shall never be well with you and your family!!!! B*tches & hoes without work experience came from working at a local restaurant kitchen in Ohio and becoming a supervisor in DFAS because of your corrupted useless European fathers in USA got you feeling like all this and all that fool!" A few hours later, E.P. received a third threat from yet another phone number, "Promised you the law or courthouse won't help you the day and murder f*ck you, murder f*ck your kids including long and short distance relatives because we done profiling y'all useless murder f*ckers rest in peace! The message is for [victim E.P] & relatives!"

The text threats did not stop there. On September 22, 2024, E.P received additional threats from yet another phone number. The sender of the message sent a link to her LinkedIn profile again and said, "Is that all it takes to be a supervisor at DFFAS [sic]?" The string threats also included a text discussing DFAS qualifications for a supervisor role -- the same threat E.P received months ago from a different phone number, "From red lobster kitchen to supervisor in DFAS because of them corrupted W***, R*** & [E.P] that were in the kitchen cooking for US military because them motherf*ckers never experience combat. You motherf*ckers thinks you owned Ohio, but we promised to killed you all motherf*ckers including the fools living in New York & Illinois. Again the law won't help your useless ugly ass got legs looking like transgender. Even with makeup you still ugliest hoes in DFAS."

E.P. also received messages threatening her children, "Make sure your kids are home schooling because it shall never be well with you Mr. & Mrs. C.P." "Promised you the law will not save you b*tches & hoes!" "Life insurance won't do you good b*tch because we gonna killed your kids for real no joke b*tch." "This is a promised not a threat and please records ever

shit because I do not stay behind b*tch."  "We won't hesitate to open fire the day we seeing you in downtown and that a promised too!"

While E.P. didn't recognize the phone numbers sending the threats, E.P. had a gut feeling who the sender was on the other side of the phone.  The Government anticipates E.P will testify that after receiving the threats, E.P made several attempts to contact local law enforcement but feared retaliation for pursing charges against Obot.  E.P. changed their family's pattern of life in fear that the threats sent by Obot to their children would be acted upon.  E.P could not escape the threats.  Messages were sent to E.P.'s phone from several different phone numbers and also posted online through social media.  After receiving the September threats, E.P. provided a signed an affidavit to DHS with the dates of the threats along with the following message: "I'm scared to send my kids to school scared to be home working alone... I fear that since he seemingly has little to lose it increases the risk of someone including myself getting hurt.  This has also been 5+ years now. I deserve peace."

      C.      DHS EXECUTES A SEARCH WARRANT AT OBOT'S RESIDENCE, SEIZING SEVERAL PHONES AND LAPTOPS CONTAINING THE THREATS SENT TO E.P., PHOTOS OF E.P.'S CHILDREN, AND INTERNET SEARCHES TO IDENTIFY ADDITIONAL RELATIVES OF E.P.

DHS SA Christopher Kiah is the lead case agent assigned to investigate the threats made by Obot to E.P.  SA Kiah obtained search warrants and sent out subpoenas to several service providers, including TextNow, Pinger Inc., Talkatone, and Charter Communications.  The subpoena and warrant responses tied Obot to several of the phone numbers sending threats to E.P.  SA Kiah sent search warrants and subpoenas for records associated with the threats and records from the service provider showed that all the telephone numbers except one shared a common Internet Protocol (IP) Address of 24.177.166.34.  Telephone numbers also shared the email address of palinkky@gmail.com and were operated by a user at IP Address 24.177.166.34.

6

This IP address used by the devices was serviced by Charter Communications and a subpoena to Charter Communications revealed Defendant Obot was associated with the IP address, along with his email accounts "GODWINOBOT@GMAIL.COM" and "PAPCY@SPECTRUM.NET." SA Kiah also learned the account was associated with an address located in Rosemount, Minnesota.   SA Kiah's investigation also revealed Obot was residing in Rosemount, Minnesota.

On June 24, 2025, SA Kiah obtained a search warrant for Obot's residence in Rosemount, Minnesota.  When agents knocked and announced their presence, Obot answered the door to the apartment.  Obot was arrested. Obot's personal effects were found in the apartment, including his passport, birth certificate, medications, and clothing.  From Obot's master bedroom and kitchen, agents seized over 26 items of electronic evidence, including several phones, laptops, tablets, a digital video recorder and a hard drive.  The items were sent to the HSI Lab for forensic examination.  Sarah Demarais, a Computer Forensic Analyst with the Department of Homeland Security Investigations, conducted the forensic examination of the devices, and the government anticipates her testimony will confirm the forensic images extracted from the devices were seized from Obot's residence. After his arrest, agents attempted to interview Obot about the threats.  When Obot was confronted with the threats made to E.P from the devices seized from his apartment, Obot denied sending any threats to E.P.  Obot said he was "hacked."

Once forensic imaging was completed on the devices, SA Chris Kiah reviewed the images extracted from the devices and found a plethora of evidence connecting Obot to the threating messages.  Obot had saved screenshots of E.P.'s LinkedIn profile and sent the images from one device to another.  There were also several photographs and screenshots of E.P., her husband, and her two young children on the devices.   A Black Apple iPhone seized from the apartment with Obot's Facebook contacts contained E. P's contact information along with E.P.'s

family members C.P., S.P. and A.P.  Another device contained E.P.'s contact information within the "Text Now" Application Phonebook and various instant messages sent to E.P were saved in the device.  SA Kiah found on one of the iPhones a Text Free Ultra Message sent on April 11, 2024 – the very same message that was sent to E.P. charged in the indictment that said – "Promised you the law or courthouse won't help you the day and murder f*ck you, murder f*ck your kids including long and short distance relatives because we done profiling y'all useless murder f*ckers rest in peace!"  "The message is for E.P. & relatives!"   It also contained a message sent on  September 24, 2024 to E.P, "Make sure that crackhead C*** is aware of your bullsh*t because he gonna get smacked anytime soon" "R****'s W****'s & P*****" "Your useless family got you in Dfas." "You do not have the qualifications to be GS13 and trying figure out how got there useless b*tch?" "Fools is too late deleting your LinkedIn profile this morning because we already got everything sh*t we needed from you including your short/long distance relatives and promised you this not a threat because you getting smacked with voodoo & evils spirited."  DHS also found internet searches conducted on Obot's devices for the names of E.P.'s additional family members.

Based on the evidence, the United States will prove beyond a reasonable doubt that on or about April 11, 2024, September 22, 2024, and September 24, 2024, Defendant Godwin Obot knowingly and intentionally sent threats to E.P. in connection with her duties as a federal employee with DFAS.

## II.    CONTROLLING LAW

The United States anticipates there will be no agreement between the parties as to the controlling law in this case.  As a result, the United States sets forth its position in detail in its proposed jury instructions.  The indictment charges three counts of Influencing Federal Officials

by Threats, in violation of 18 U.S.C. § 115(a)(2). To establish a violation of Section 115, the government must prove the following elements beyond a reasonable doubt:

A. First, that the defendant threatened to assault or murder a federal employee;

B. Second, that at the time of the alleged threat, the person was a federal employee;

C. Third, that the defendant did so with the intent to impede, intimidate, and interfere with such official while the official was engaged in the performance of official duties, or with the intent to retaliate against such official on account of the performance of official duties.[1]

## III. ANTICIPATED EVIDENTIARY ISSUES

The United States anticipates that the following evidentiary issues may arise at trial:

A. USE OF "INEXTRICABLY INTERTWINED" OR OTHERWISE ESSENTIAL *RES GESTAE EVIDENCE*

The United States anticipates introducing evidence that is inextricably intertwined or otherwise *res gestae* background evidence essential for the jury to understand the underlying events. More specifically, the United States intends to introduce evidence that 1) Godwin Obot was fired from his employment at DFAS by Tonya Hughes-Scruggs on August 12, 2019, for contemptuous behavior and that 2) Obot used the same language contained in threats to E.P. in conversations with other individuals at different dates, proof to support his identity as the individual sending the threats to E.P.

As to the conduct leading to Obot's termination, this Court should find that the Notice of Proposed Removal, Notice of Decision, and the failed appeals filed with MSRB and this District

---

[1] No Sixth Circuit model jury instruction exists. The Government has found a reference to reply upon, RUSCHLY & SHEALY, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina*, pp. 34-36 (2024 Online Edition) and *United States v. Stubler*, 2006 U.S. Dist. LEXIS 80910, 2006 WL 3043073 (M.D. Pa. Oct. 24, 2006), *aff'd*, 271 Fed. Appx. 169 (3d Cir. 2008) (citation omitted).

are background evidence or *res gestae*. The Sixth Circuit has deemed that Rule 404 of the Federal Rules of Evidence does not bar "background" or *res gestae* evidence. In *United States v. Hardy*, the Sixth Circuit announced, "[t]his court has previously recognized the propriety of introducing 'background' evidence. Such evidence, often referred to as 'res gestae' does not implicate Rule 404(b)." 228 F.3d 745, 748 (6th Cir. 2000) (citing *United States v. Buchanan*, 213 F.3d 302, 311 (6th Cir. 2000). The *Hardy* court then explained:

> Rather, the very definition of what constitutes background evidence contains inherent limitations. *Buchanan, Paulino* and other cases dealing with this issue teach that background or *res gestae* evidence consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense.
>
> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

228 F.3d at 748 (emphasis added) (citing 2 Jack B. Weinstein, Margaret A. Berger & Joseph M. McLaughlin, *Weinstein's Federal Evidence*, § 404.20[2][c] and [d]; *United States v. Weinstock*, 153 F.3d 272, 277 (6th Cir.1998); *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.1995); *United States v. Townsend*, 796 F.2d 158, 162 (6th Cir.1986); *United States v. Cunningham*, 103 F.3d 553, 557 (7th Cir.1996); and Jennifer Y. Schuster, *Uncharged Misconduct Under Rule 404(b): The Admissibility of Inextricably Intertwined Evidence,* 42 U. Miami Law Review 947 (March/May 1998) (*See United States v. Rice*, 2004 WL 333800 (6th Cir. 2004).

Here, the jury would need to know how Obot knew E.P. and the adverse employment actions made by E.P that led to his termination and unsuccessful litigation to reverse his termination. These facts set the background and explain the reasoning behind Obot's desire to threaten E.P.

As for the statements made to others using the same language contained in the threats, the United States previously filed its Nice of its Intent to use this evidence on July 7, 2026, in accordance with this court's trial order.  This Court granted the United States' 404(b) notice to classify the statements as *res gestae* and/or proof of identity under Fed. R. Evid. 404(b) on record at the final pretrial hearing held on July 14, 2026.

B.      STIPULATIONS

The United States anticipates the parties will not enter into any stipulations at this time.

C.      PRESENCE OF GOVERNMENT AGENT AT TRIAL

The United States respectfully requests that the Court issue a witness-sequestration order pursuant to Federal Rule of Evidence 615.  The United States designates DHS Federal Protective Service SA Christopher Kiah, the lead case agent, as its representative in this case to be present at counsel table throughout the trial. SA Kiah's presence in the courtroom during trial is essential to the presentation of the government's case. *See* FED. R. EVID. 615(b) (specifically excluding from a sequestration order "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney"); FED. R. EVID. 615(c) (providing an additional exception for essential witnesses).

<div style="margin-left:40%">

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By:    /s/ Elizabeth Crook
       Elizabeth Crook (OH: 0088709)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       Phone: (216) 622-3825
       Elizabeth.Crook@usdoj.gov

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July 2026 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Godwin Obot will be served by regular U.S. Mail.

Godwin Obot
Mahoning County Jail
110 Fifth Avenue
Youngstown, Ohio 44503

/s/ Elizabeth Crook
Elizabeth Crook
Assistant U.S. Attorney

12